| | | |
|---|---|---|
| BITCO GENERAL INSURANCE CORPORATION, formerly known as BITUMINOUS CASUALTY CORPORATION, | § § § § § | CIVIL NO. SA-18-CV-00325-FB-ESC |
| *Plaintiff,* | § § | |
| vs. | § § | |
| MONROE GUARANTY INSURANCE COMPANY, A MEMBER OF THE FCCI INSURANCE GROUP, | § § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Fred Biery:**

This Report and Recommendation concerns Plaintiff BITCO General Insurance Corporation's Motion for Summary Judgment [#30] and Defendant Monroe Guaranty Insurance Company's Motion for Summary Judgment [#32]. The Honorable Fred Biery referred all pre-trial proceedings in this case to the undersigned for disposition pursuant to Rule 72 of the Federal Rules of Civil Procedure and Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#33]. The undersigned has authority to enter this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After considering both motions, the responses and replies thereto [#34, #35, #37], and the Joint Stipulation in Support of Cross-Motions for Summary Judgment [#31], the undersigned recommends that Plaintiff's Motion for Summary Judgment [#30] be **GRANTED** and that Defendant's Motion for Summary Judgment [#32] be **DENIED**.

# I.  Introduction

This is an insurance coverage dispute between two insurance companies.  In this case, the sole remaining issue, and the issue presented by the cross-motions for summary judgment, is whether Defendant Monroe Guaranty Insurance Company, a Member of the FCCI Insurance Group ("MGIC"), had a duty to defend 5D Drilling and Pump Service, Inc., formerly known as Davenport Drilling & Pump Service, Inc. ("5D"), and its president, Dean Davenport ("Davenport"), in an underlying lawsuit styled *David Jones d/b/a J & B Farms of Texas v. Dean Davenport, 5 D Drilling and Pump Service, Inc. f/k/a Davenport Drilling & Pump Service, Inc.*, Cause No. 2016-CI-10959, filed in the 45th Judicial District Court of Bexar County, Texas ("the Underlying Lawsuit").  MGIC did have a duty to defend.

# II.  Undisputed Facts

In the Underlying Lawsuit, David Jones, doing business as J&B Farms of Texas ("Jones"), sued 5D and Davenport for breach of contract and negligence.  Thereafter, Plaintiff BITCO General Insurance Corporation, formerly known as Bituminous Casualty Corporation ("BITCO"), sued MGIC, Davenport, 5D, and Jones in the instant federal lawsuit [#1], seeking declaratory relief against MGIC to establish its duty to defend pursuant to a commercial general liability ("CGL") insurance policy that MGIC issued to 5D.  Specifically, BITCO seeks a declaratory judgment that MGIC had a duty to defend 5D and Davenport against the claims raised by Jones in the Underlying Lawsuit.

The parties agree that the operative pleading in the Underlying Lawsuit is Jones's Third Amended Petition, which is attached as Exhibit 1 to BITCO's Complaint [#1-1].  In the Underlying Lawsuit, Jones asserted claims for negligence and breach of contract against 5D and Davenport, alleging that they failed to properly drill an irrigation water well on his farm in Frio

County, Texas. (3d Am. Pet. [#1-1] at 2–3.) Jones averred that 5D's faulty workmanship damaged his property and the Edwards Aquifer, which flows under his property. (*Id.* at 3.) During the Underlying Lawsuit, 5D and Davenport asserted that BITCO and MGIC had a duty to defend them against Jones's claims, basing their contention on two different CGL policies.

BITCO issued a CGL policy to 5D for the period of October 6, 2013 through October 6, 2014, and MGIC issued a CGL policy to 5D for the period of October 6, 2015 through October 6, 2016 ("the MGIC Policy"). (BITCO Policy[1] [#30-1] at 40; MGIC Policy[2] [#32-1] at 1.) Both BITCO and MGIC initially refused to defend 5D or Davenport in the Underlying Lawsuit. (02/22/18 Re-Tender of Defense to FCCI/MGIC[3] [#30-6] at 3.) However, after being served with the Third Amended Petition, BITCO agreed to provide a defense to 5D and Davenport, subject to a reservation of rights. (*Id.*) But MGIC continued to refuse to defend 5D or Davenport, citing two business-risk exclusions in the MGIC Policy and asserting that the alleged "property damage" occurred outside the policy period. (02/12/18 FCCI/MGIC Attorney Denial of Defense[4] [#30-5] at 4; 02/27/18 FCCI/MGIC Denial of Defense[5] [#30-7] at 2.) The Underlying Lawsuit has since settled and been dismissed.

This federal case concerns only the MGIC Policy and whether it gave rise to a duty to defend in the Underlying Lawsuit. BITCO contends that MGIC had a duty to defend 5D and

---

[1] The BITCO Policy is attached as Exhibit 1 to BITCO's Motion for Summary Judgment [#30].

[2] The MGIC Policy is attached as Exhibit 1 to MGIC's Motion for Summary Judgment [#32].

[3] 5D's February 22, 2018 re-tender of defense to MGIC is attached as Exhibit 5 to BITCO's Motion for Summary Judgment [#30].

[4] MGIC's February 12, 2018 letter denying coverage for the claims in Jones's Third Amended Petition is attached as Exhibit 4 to BITCO's Motion for Summary Judgment [#30].

[5] MGIC's February 27, 2018 letter denying coverage for the claims in Jones's Third Amended Petition is attached as Exhibit 6 to BITCO's Motion for Summary Judgment [#30].

Davenport in the Underlying Lawsuit and, therefore, seeks to recover for MGIC's share of their defense, as well as attorney's fees and costs incurred in pursuing this declaratory judgment action.

## II. Summary-Judgment Standard

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323; *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). Once the movant carries its initial burden, however, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Nor may the non-movant "rely on mere allegations in the pleadings; rather, the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Miss. River Basin All. v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The non-movant

can satisfy its burden by tendering depositions, affidavits, and other competent evidence to buttress its claim. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). The district court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in the non-movant's favor. *See Envtl. Conservation Org. v. City of Dall.*, 529 F.3d 519, 524 (5th Cir. 2008); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). However, if the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. Analysis

BITCO seeks a declaratory judgment that MGIC had a duty to defend 5D and Davenport in the Underlying Litigation. MGIC argues that it did not have such a duty for two reasons: (1) the alleged "property damage" occurred outside the policy period; and (2) two business-risk exclusions apply and exclude Jones's claims from coverage. After considering the pleadings and the MGIC Policy language, as is required by the "eight-corners rule," the undersigned finds that neither reason is persuasive. Because the Third Amended Petition alleges "property damage" caused by an "occurrence" that could have occurred during the policy period, and because the business-risk exclusions cited by MGIC bar coverage for some, but not all, of the alleged "property damage," MGIC's duty to defend was triggered under the MGIC Policy. Thus,

Plaintiff's Motion for Summary Judgment should be granted, and Defendant's Motion for Summary Judgment should be denied.

A.     **The eight-corners rule applies.**

Under Texas law, "an insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam); *see also Dall. Nat. Ins. Co. v. Sabic Ams., Inc.*, 355 S.W.3d 111, 117 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("The insurer's duty to defend arises when pleadings raise allegations that, if taken as true, potentially state a cause of action within the terms of the policy.").  This is known as the "eight-corners" or "complaint-allegation rule." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).

"If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994).  However, in the event of an ambiguity, courts "construe the pleadings liberally, resolving any doubt in favor of coverage." *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005).  At the same time, courts "may not read facts into the pleadings, look outside the pleadings, or speculate as to factual scenarios that might trigger coverage or create an ambiguity." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011).  And, while "[t]he factual allegations are considered without regard to their truth or falsity," *Ewing Const. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014), courts "only defer to a complaint's characterization of factual allegations, not legal theories or conclusions," *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012).

"Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). "The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Am. All. Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 154 (Tex. App.—Dallas 1990, writ dism'd w.o.j.). "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Nokia*, 268 S.W.3d at 491.

**B.** **The relevant allegations are contained in Jones's Third Amended Petition.**

Applying the eight-corners rule, the relevant pleading is the Third Amended Petition, which contains the following factual allegations:

### VI. FACTS

Plaintiffs own and commercially farm real property, which is located in Frio County, Texas, (hereinafter referred to as the "Property"). In the summer of 2014, Plaintiff contracted with Defendants, Davenport, to drill a commercial irrigation well, for Plaintiffs' business, conducting commercial farming operations. Defendants agreed to drill and complete a commercial irrigation water well through the Edwards Aquifer, to a depth of approximately 3,600 Ft. Defendants reached the Edwards Aquifer at approximately 3,500 Ft., and while negligently drilling "stuck" the drilling bit in the bore hole, rendering the well practically useless for its intended/contracted for purpose. Defendants have failed and refused to plug the well, retrieve the drill bit, and drill a new well. In addition, the well in question deviates in an unacceptable fashion from vertical. Also, the Defendants failed to case the well through the Del Rio clay, allowing detritus to slough off the clay, falling down the bore and filling up the well. In addition, Defendants have failed to notify the Texas Department of Licensing and Regulation Department/Texas Water Well Drillers Advisory Council, to advise them of Defendants' negligence, and/or advise said entities of Defendants' abandonment of the well, leaving the well to artesian flow. Plaintiff has paid Defendants in excess of $500,000.00 for drilling said well, and has incurred bills of hundreds of thousands of dollars in addition. Defendants have failed and refused to complete the well, in breach of the contract/agreement.

On the occasion in question, Defendant Dean Davenport, was acting in the course and scope of his employment with 5D Drilling and Pump Service Inc., and Davenport Drilling and Pump Service, Inc.

(3d Am. Pet. [#1-1] at 2–3.)  On the basis of these allegations, Jones asserted negligence claims against Davenport and negligence and breach-of-contract claims against 5D, seeking over one million dollars in damages.  *See id.* at 4-7.

**C.**   **The MGIC Policy covers "property damage" caused by an "occurrence" that could have occurred during the policy period, unless an exclusion applies.**

The MGIC Policy was issued to 5D for the period of October 6, 2015 through October 6, 2016 ("the policy period").  (MGIC Policy [#32-1] at 1.)  Coverage A of the MGIC Policy, titled "Bodily Injury and Property Damage Liability," provides that MGIC "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and "will have the right and duty to defend the insured against any 'suit' seeking those damages."  (*Id.* at 26.)  Coverage A further provides that "[t]his insurance applies to 'bodily injury' or 'property damage' only if: (1) [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; [and] (2) [t]he 'bodily injury' or 'property damage' occurs during the policy period."  (*Id.*)  Consequently, MGIC's duty to defend is triggered by a claim for "property damage" or "bodily injury" caused by an "occurrence" that occurs during the policy period.

MGIC does not dispute that Jones experienced "property damage" caused by an "occurrence," as defined in the MGIC Policy, as a result of 5D's construction of the borehole.  Rather, MGIC claims that the alleged "property damage" occurred outside the policy period.  Jones's Third Amended Petition alleges that, "[i]n the summer of 2014," Jones entered into a contract with 5D to drill a water well.  (3d Am. Pet. [#1-1] at 2.)  It also alleges that, "[o]n or

about August 14, 2014, Plaintiffs obtained from Defendants an invoice for drilling a well through the Edwards aquifer [sic] . . . ."  (*Id.* at 5.)  However, the state-court petition contains no other factual allegations regarding the date on which Jones's property was allegedly damaged.  The Underlying Lawsuit was commenced on June 30, 2016.  Presumably, then, the alleged "property damage" occurred between "the summer of 2014" and June 30, 2016.  (*Id.*)  Because the MGIC Policy ran from October 6, 2015 to October 6, 2016, the alleged "property damage" could have occurred during the policy period.  It follows that there is *potentially* a claim in the Third Amended Petition within the coverage of the MGIC Policy, which is sufficient to trigger MGIC's duty to defend under that policy, unless an exclusion applies.  *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) ("The insurer is obligated to defend the insured, provided that the petition or complaint alleges at least one cause of action *potentially* within the policy's coverage.") (emphasis added).

**D.    The exception to the eight-corners rule, which allows courts to consider extrinsic evidence in limited circumstances, does not apply in this case.**

Next, the undersigned considers whether the Court may consider extrinsic evidence that, according to MGIC, establishes that the alleged "property damage" occurred outside the policy period.  MGIC asserts that because Jones's petition is insufficiently precise to determine coverage, this Court may consider extrinsic evidence in determining the duties it owed to 5D and Davenport.  The undersigned disagrees.

As explained above, the eight-corners rule provides that "an insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy."  *Merchs.*, 939 S.W.2d at 141.  Although the Texas Supreme Court has never expressly recognized an exception to the eight-corners rule, some lower courts in Texas have.  *See*, *e.g.*, *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452–53 (Tex. App.—Corpus Christi 1992, writ

denied); *Cook v. Ohio Cas. Ins. Co.*, 418 S.W.2d 712, 715–16 (Tex. Civ. App.—Texarkana 1967, no writ); *Int'l Serv. Ins. Co. v. Boll*, 392 S.W.2d 158, 161 (Tex. Civ. App.—Houston 1965, writ ref'd n.r.e.). In *GuideOne*, the Texas Supreme Court explained that, "[g]enerally, these courts have drawn a very narrow exception, permitting the use of extrinsic evidence only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim." 197 S.W.3d at 308. In *GuideOne*, however, the insurer relied on extrinsic evidence that was relevant both to coverage and liability and, thus, did not fit this exception to the rule. *See id.* at 309. The court, therefore, concluded that, because the circumstances of the case presented no reason to create an exception to the eight-corners rule, the trial court had erred in using extrinsic evidence to defeat the insurer's duty to defend. *See id.* at 307.

Although the Texas Supreme Court has not definitively ruled on the issue, the Fifth Circuit has stated that, were the Texas Supreme Court to recognize an exception to the eight-corners rule, it would be limited to cases where "it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield*, 363 F.3d at 531; *see also W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 313 (5th Cir. 1993) ("[W]hen the petition does not contain sufficient facts to enable the court to determine if coverage exists, it is proper to look to extrinsic evidence in order to adequately address the issue."). The Fifth Circuit has noted that the Texas Supreme Court, in its *GuideOne* decision, "cited [the Fifth Circuit's] language from *Northfield* with approval, though it held that the circumstances of the case before it did not meet the conditions of the exception." *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 475–76

(5th Cir. 2009). Accordingly, the Fifth Circuit's "*Erie* guess" is that the Texas Supreme Court would recognize the above exception to the rule. *Id.* at 476; *see also Star-Tex Res., L.L.C. v. Granite State Ins. Co.*, 553 F. App'x 366, 371 (5th Cir. 2014) ("We conclude that there is a limited exception to the eight-corners rule that . . . allows us to consider extrinsic evidence."). Since then, several federal district courts, including this one, have recognized and applied such an exception.[6] In sum, the Fifth Circuit has articulated a limited exception to the eight-corners rule that allows a court to consider extrinsic evidence "only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim." *GuideOne*, 197 S.W.3d at 308.

MGIC argues that, if the Court looks beyond the "eight corners" of the complaint and the insurance policy, it should consider the parties' stipulation that the drill bit became stuck in the borehole in November 2014, eleven months before the policy period began. (Stipulation in Support of Cross-Motions for Summary Judgment [#31] at ¶ 1.) The undersigned disagrees. To be sure, it is impossible to discern from Jones's state-court petition when the alleged "property damage" occurred. Additionally, because MGIC's duty to defend hinges on when the alleged "property damage" occurred, such a determination is "critical to the question of coverage" under the MGIC Policy issued to 5D. *See W. Heritage*, 998 F.2d at 315.

---

[6] *Sentry Select Ins. Co. v. Drought Transp.*, LLC, No. 15-CV-890 (RCL), 2017 WL 5382168, at *1 (W.D. Tex. May 3, 2017) (stating that a court may consider extrinsic evidence "(1) if it is initially impossible to discern whether coverage is potentially implicated, and (2) when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case"); *Nautilus Ins. Co. v. Tex. State Sec. & Patrol*, No. CIV. SA-09-CA-390-OG, 2010 WL 3239157, at *5 (W.D. Tex. June 8, 2010), *report and recommendation adopted*, No. SA-09-CA-390-OG, 2010 WL 3239159 (W.D. Tex. July 13, 2010) ("The *Northfield* rule appears to be the standard applied in the Fifth Circuit.").

However, because the extrinsic evidence shows only when the drill bit became stuck in the borehole, it is not dispositive of the coverage issue. The allegations of "property damage" in the state-court petition are not limited to the lodging of the drill bit in the borehole. Jones also alleges that 5D and Davenport "failed to case the well through the Del Rio clay [sic], allowing detritus to slough off the clay, falling down the bore and filling up the well." (3d Am. Pet. [#1-1] at 3.) Jones further alleges that 5D and Davenport abandoned the well, "leaving the well to artesian flow." (*Id.*) Finally, Jones claims that 5D and Davenport damaged the Edwards Aquifer—specifically, the flow of water in the Edwards Aquifer. (*Id.* at 7.) Thus, the "property damage" is alleged to have occurred not only when the drill bit became stuck in the borehole, but also when debris fell down the borehole and filled up the well, the well was abandoned, and the flow of water in the Edwards Aquifer was interrupted. The extrinsic evidence, which establishes only when the drill bit became stuck, does not provide a timeframe for these allegations. Yet, the debris could have fallen down the borehole and filled up the well, or the Edwards Aquifer could have been damaged, after the drill bit became stuck in the borehole and during the policy period.

In addition, even the courts that have recognized an exception to the eight-corners rule have done so only "under limited circumstances involving pure coverage questions." *GuideOne*, 197 S.W.3d at 310. Here, however, MGIC relies on extrinsic evidence that is relevant both to coverage and the merits and, therefore, does not fit the above exception to the rule. For example, the alleged failure to case the well constitutes negligence only if it was the legal cause of the alleged damage to Jones's property. *See Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001) (stating that to establish liability based on negligence, a plaintiff must provide evidence of, among other things, damages proximately caused by a breach of a legal duty owed by the defendant to the plaintiff). To answer this question, the state court would have had to

determine, among other things, when the well should have been cased, when the debris fell down the borehole and filled up the well, and when the Edwards Aquifer was damaged. And the date on which the drill bit became stuck in the borehole is likely relevant to these issues. Thus, the extrinsic evidence overlaps with the merits of the underlying case. Both the Fifth Circuit and the Texas Supreme Court have explicitly rejected the use of extrinsic evidence in these circumstances. *See Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 371 (5th Cir. 1993); *GuideOne*, 197 S.W.3d at 309.

MGIC's contrary arguments are unpersuasive. MGIC notes that the MGIC Policy requires that:

> Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(MGIC Policy [#32-1] at 26.) MGIC insists that the extrinsic evidence demonstrates that, prior to the policy period, 5D knew that the "property damage" had occurred, in whole or in part. The undersigned is unconvinced. Jones alleges that 5D damaged his property "by lodging a drill bit and part of a bottom hole assembly in the aquifer under Plaintiffs' property, damaging the aquifer and damaging the free flow of water in the aquifer." (3d Am. Pet. [#1-1] at 7.) Although the extrinsic evidence demonstrates that the drill bit became stuck in the borehole prior to the

policy period, it does not show that 5D *knew* that the drill bit became stuck in the borehole prior to the policy period.[7]

Finally, MGIC's reliance on two decisions of the Southern District of Texas is misplaced. *See Century Sur. Co. v. Dewey Bellows Operating Co.*, No. CIV.A. H-08-1901, 2009 WL 2900769 (S.D. Tex. Sept. 2, 2009); *Boss Mgmt. Servs., Inc. v. Acceptance Ins. Co.*, No. CIV.A. H-06-2397, 2007 WL 2752700 (S.D. Tex. Sept. 19, 2007). In *Dewey* and *Boss Mgmt.*, the court looked to extrinsic evidence to determine whether coverage was potentially implicated. *See Dewey*, 2009 WL 2900769, at *8 ("Because the underlying petition does not contain facts that allow the court to determine when Dewey knew of an 'occurrence' and when it reported that 'occurrence,' the court looks to extrinsic evidence to determine these dates."); *Boss Mgmt.*, 2007 WL 2752700, at *11 ("The certificates of occupancy provide undisputed evidence of the dates on which the buildings were completed and occupied and would allow the court to assess whether coverage is potentially implicated."). However, in each of those cases, the extrinsic evidence was dispositive of the coverage issue—*i.e.*, the extrinsic evidence conclusively demonstrated that the accident at issue was excluded from coverage—and did not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case. Here, in contrast, the extrinsic evidence cited by MGIC is not dispositive of the coverage issue and is relevant both to coverage and to the merits of the underlying action. Thus, the extrinsic evidence in question

---

[7] On February 12, 2018, MGIC sent a letter to 5D, denying all coverage under the MGIC Policy. (The letter is attached as Exhibit 4 to BITCO's Motion for Summary Judgment [#30].) In the letter, MGIC stated that "[t]he insured confirmed that it was aware of the issue and alleged damage involving the drill bit and bottom hole assembly in the well prior to the inception of the FCCI policy." (02/12/18 FCCI/MGIC Denial of Defense [#30-7] at 4.) But MGIC has not raised this argument in this case, nor has it submitted evidence in support of this contention. In addition, it is well-established that "[t]he duty to defend is not affected by facts ascertained before suit, developed in the process of the litigation, or by the ultimate outcome of the suit." *Gulf Chem.*, 1 F.3d at 369 (quoting *Frito-Lay*, 788 S.W.2d at 153–54).

does not fall within the "very narrow exception" to the eight-corners rule. *GuideOne*, 197 S.W.3d at 308.

In sum, MGIC has failed to satisfy the second part of the two-part test for the admissibility of extrinsic evidence to determine the duty to defend. Therefore, extrinsic evidence may not be used to determine if coverage exists, and MGIC's duty to defend is to be determined only by reference to the petition and the policy's provisions. Because Jones's Third Amended Petition alleges "property damage" caused by an "occurrence" that could have occurred during the policy period, MGIC had a duty to defend under its policy, unless an exclusion applies.

**E.      The business-risk exclusions in the MGIC Policy do not apply in this case.**

In the alternative, MGIC argues that coverage for any damage to the wellbore and aquifer is barred by two business-risk exclusions in Coverage A of the MGIC Policy. The undersigned disagrees. The two business-risk exclusions cited by MGIC, I.2.j.(5) and j.(6), would limit its indemnity obligation, but, because not all of the alleged "property damage" falls within one of these two exclusions, MGIC's duty to defend was triggered under the MGIC Policy. For the reasons explained below, the business risk exclusions do not eliminate MGIC's duty to defend.

The Fifth Circuit has explained that, "when the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claim within an exclusion from coverage, there is no duty to defend." *Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir. 1994) (citing *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)). "Although the insured bears the initial burden to prove its claim falls within the scope of coverage afforded by the policy, the insurer bears the burden to prove an exclusion precludes coverage." *Lone Star Heat Treating Co. v. Liberty Mut. Fire Ins. Co.*, 233 S.W.3d 524, 526 (Tex. App.—Houston [14th Dist.] 2007, no pet.). "Exclusions are narrowly construed, and all

reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008) (citing *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d 450, 458–59 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991) (stating the well-established rule that "if a contract of insurance is susceptible of more than one reasonable interpretation," the court "must resolve the uncertainty by adopting the construction that most favors the insured"). Therefore, the Court "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99 F.3d 695, 701 (5th Cir. 1996) (quoting *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)).

MGIC asserts that coverage is excluded under Exclusion (j) of its policy, which excepts from coverage:

"Property damage" to:

. . .

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(MGIC Policy [#32-1] at 29–30.) "Your work" is defined, in relevant part, as "[w]ork or operations performed by you or on your behalf; and . . . [m]aterials, parts or equipment furnished in connection with such work or operations." (*Id.* at 41.) These types of exclusions are

commonly referred to as "business-risk exclusions" and "have been widely recognized as a valid limitation on coverage in general liability insurance policies." *T.C. Bateson Const. Co. v. Lumbermens Mut. Cas. Co.*, 784 S.W.2d 692, 695 (Tex. App.—Houston [14th Dist.], writ denied). "Such exclusions are designed to protect insurers from the insured's attempt to recover funds to correct deficiencies caused by the insured's questionable performance." *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 196 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Their use demonstrates "the insurers' belief that the cost of not performing well is a cost of doing business and is not part of the risk-sharing scheme for which the policy has been written." *Id.* (citing *T.C. Bateson*, 784 S.W.2d at 695); *see also Dall. Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 222 (Tex. App.—Dallas 2015, no pet.) ("The rationale for treating such risks differently is that 'the insured can control the quality of the goods and services he supplies.'") (quoting *T.C. Bateson*, 784 S.W.2d at 694).

BITCO concedes that the two business-risk exclusions cited by MGIC, exclusions j.(5) and j.(6), would *limit* MGIC's duty to *indemnify* 5D. But BITCO argues that, because the business-risk exclusions bar coverage for some, but not all, of the alleged "property damage," MGIC's duty to defend was nevertheless triggered. The undersigned agrees.

"The duty to defend and the duty to indemnify 'are distinct and separate duties.'" *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (quoting *King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). "The duty to defend means the insurer will defend the insured in any lawsuit that 'alleges and seeks damages for an event potentially covered by the policy,' while the duty to indemnify means the insurer will 'pay all covered claims and judgments against an insured.'" *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252–53 (5th Cir. 2011) (quoting *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300

S.W.3d 740, 743 (Tex. 2009)). While an insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy, "an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Id.* (citing *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)). "Thus, an insurer may have a duty to defend but, eventually, no duty to indemnify." *Farmers*, 955 S.W.2d at 82; *see also Gulf Chem.*, 1 F.3d at 369 ("The duty to defend is broader than the duty to indemnify.") (citing *Colony Ins. Co. v. H.R.K., Inc.*, 728 S.W.2d 848, 850 (Tex. App.—Dallas 1987, no writ)).

Here, both business-risk exclusions are limited by the phrase "[t]hat particular part." The Fifth Circuit has reasoned that the "plain meaning" of this language "is that property damage only to parts of the property that were themselves the subjects of the defective work is excluded." *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 215 (5th Cir. 2009). Thus, the Fifth Circuit has made clear that, in order for these exclusions to apply, "the 'particular part' of the property must have been the subject of incorrectly performed work." *Id.* That is not the case here, as explained more fully below.

The Fifth Circuit has previously found that a duty to defend arose under circumstances similar to those involved in this case. For example, *Gore* involved the defective installation of an in-flight entertainment/cabin management system ("IFE/CMS") on a Boeing Business Jet. During the installation of the IFE/CMS, a subcontractor miswired a component, resulted in substantial physical damage to the aircraft's electrical system and to a vast array of electrical equipment installed on the aircraft. *See Gore*, 538 F.3d at 36 –68. The court rejected the insurer's argument that identically worded business-risk exclusions applied to the entire aircraft, reasoning that they "would exclude coverage for the damage to the IFE/CMS itself (or, perhaps,

the electrical system)," but not the rest of the aircraft and the ensuing loss-of-use damages. *Id.* at 371.

The Fifth Circuit's reasoning in *Mid-Continent* is also instructive. In that case, an insurer filed a declaratory judgment action, seeking a determination that it had no duty under a CGL insurance policy to defend or indemnify its insured, a builder, in a state-court case stemming from the insured's defective construction of a five-unit condominium project. *See Mid-Continent*, 557 F.3d at 209–10. Although the builder's work was limited to the exterior portions of the condominiums, the builder's failure to properly water-seal the exterior finishes and retaining walls caused "large quantities of water [to] penetrate[] the interior of the structure through ceilings and walls, under doors, and at other points, damaging contiguous building materials and interior finishes, including interior drywall, stud framing, electrical wiring, and wood flooring, prior to the final completion of the project." *Id.* at 210. The court held that the business-risk exclusion for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it" barred coverage only for:

> [D]amage to the part of the condominium project that was itself the subject of the defective work that caused property damage (the exterior portions of the condominiums that were not adequately waterproofed), not to other parts of the condominium project that were damaged as a result of the defective work but were not themselves the subject of the defective work (the interior drywall, stud framing, electrical wiring, and wood flooring).

*Id.* at 214. Reasoning that "[t]he exterior finishes and retaining walls were distinct component parts that were each the subject of separate construction processes and are severable from the interior drywall, stud framing, electrical wiring, and wood flooring," the court found that water damage to the interior portions of the condominiums did not fall within the ambit of the business-risk exclusions. *Id.* at 217.

This case is analogous to *Gore* and *Mid-Continent*, in which the Fifth Circuit construed exclusions identically worded to the MGIC Policy's business-risk exclusions. Here, it is alleged that 5D was hired to drill an irrigation water well on a farm in Frio County, Texas. (3d Am. Pet. [#1-1] at 2–3.) It is further alleged that 5D's deficient work on the well damaged the Edwards Aquifer, which flows under the farm. (*Id.* at 3.) However, the Edwards Aquifer was not itself the subject of the defective work. To be sure, 5D was hired to drill a well *through* the Edwards Aquifer. But 5D was not hired to work on the Edwards Aquifer, and, at any rate, the Edwards Aquifer was not the "particular part" of the property that was the subject of the insured's incorrectly performed work. Rather, the allegedly defective work was limited to the work performed by 5D on the well. Stated differently, the Edwards Aquifer may have been damaged as a result of 5D's defective work on the well, but it was not itself the subject of the defective work. Adopting MGIC's interpretation of the exclusions would read out the phrase "[t]hat particular part." As the Fifth Circuit noted in *Gore*, "[i]f work on any part of a property would leave an insured exposed for damages to the entire property, the exclusion should state: 'Property damage to property that must be restored, repaired or replaced because your work was incorrectly performed on any part of it.'" 538 F.3d at 371. It follows that exclusion j.(5) and exclusion j.(6) exclude coverage for damage to the well itself, but not the Edwards Aquifer.

MGIC's arguments to the contrary are unpersuasive. MGIC argues that the business-risk exclusions apply to all "property damage" to the farm that resulted from 5D's defective work on the well. In so arguing, MGIC relies primarily on *CBX Res., LLC v. Ace Am. Ins. Co.*, 282 F. Supp. 3d 948 (W.D. Tex. 2017), and *Sw. Tank & Treater Mfg. Co. v. Mid-Continent Cas. Co.*, 243 F. Supp. 2d 597, 600 (E.D. Tex. 2003). But those cases are inapposite. The Fifth Circuit expressly declined to follow *Sw. Tank* in *Gore*, noting that the court there "focused on the

insured's work on the entire tank that was damaged, rather than on a particular part." *Gore*, 538 F.3d at 371 n.8. Furthermore, while it may make sense to interpret the phrase "[t]hat particular part" to include an entire storage tank, it does not make sense to interpret the phrase to refer to an aquifer that was damaged as the result of defective work on an irrigation water well.

MGIC's reliance on *CBX Res.* is similarly flawed. In that case, an oil and gas exploration and production company was hired to drill and operate a well on a mineral tract located in Zavala County, Texas. *See CBX. Res.*, 282 F. Supp. at 952. The company's work on the well caused it to become fractured, plugged, and abandoned. *Id.* at 953. The company had a CGL insurance policy, which excluded coverage for damage to "[t]hat particular part" of the property on which the allegedly defective work was performed. *Id.* at 956. The company argued that this exclusion barred coverage "only for damage to the production casing and/or the completion liner of the Well, but not physical injury to, and loss of use of, the Well in its entirety." *Id.* at 957. The court disagreed, reasoning that:

> [T]here was no domino effect of damage to the entire well triggered by [the company's] defective work on one independent working part of the well; rather, [the company's] work was performed during the overall drilling and completion operation of the Well and thus caused damage to the entire Well when its work was incorrectly performed.

*Id.* at 958–59 (W.D. Tex. 2017) (quoting Cook v. Admiral Ins. Co., 438 F. App'x 313, 319 (5th Cir. 2011)). MGIC's reliance on *CBX Res.* is misplaced because, here, 5D has allegedly damaged property beyond "[t]hat particular part" of the property on which it worked. Thus, this is a case "in which the insured's work was to be performed on a discrete independent component of a whole piece of property, and its defective work on that one component caused damage to other components of the whole property." *Cook*, 438 F. App'x at 319 (citing *Gore*, 538 F.3d at 371–72).

Finally, the undersigned notes that, even if the business-risk exclusions were susceptible to more than one reasonable construction, Texas law would still require that the policy be construed in favor of coverage. *See Barnett*, 723 S.W.2d at 66. "Exceptions and limitations in an insurance policy are strictly construed against the insurer." *Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 263 (5th Cir. 2005). This Court must adopt the construction of the exclusionary clauses that most favors the insured, as long as it is not unreasonable. *See Gen. Star*, 252 S.W.3d at 459. For the reasons mentioned above, BITCO's interpretation—that, as is relevant here, damage to the Edwards Aquifer is not excluded under exclusion j.(5) or exclusion j.(6) because the Edwards Aquifer was not itself the subject of the defective work that caused the "property damage"—is reasonable.

In sum, strictly construing the business-risk exclusions in the policy at issue against MGIC and in favor of 5D, and resolving any doubt in favor of the duty to defend, the undersigned finds that the facts alleged in the state-court petition, if taken as true, potentially state a cause of action within the terms of the policy. And the rule is that "[i]f a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Nokia*, 268 S.W.3d at 491. The undersigned, therefore, concludes that MGIC owed 5D a duty to defend and that BITCO is entitled to summary judgment.

## IV. Conclusion and Recommendation

Having considered the motions, the responses and replies thereto, the applicable legal authorities, and the entire record in this matter, the undersigned recommends that Plaintiff BITCO General Insurance Corporation's Motion for Summary Judgment [#30] be **GRANTED** and that Defendant Monroe Guaranty Insurance Company's Cross-Motion for Summary Judgment [#32] be **DENIED.**

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Report and Recommendation must be filed within fourteen (14) days after being served with a copy of same, unless this time period is modified by the district court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive, or general objections.  A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a de novo determination by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 31st day of July, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE